MOTIVA ENTERPRISES,
LLC, Appellant,

v.

Audeen McCRABB, Norma Ann Euton, Connie Mendez, Tom Mendez, Kirk McCrabb, Kathy McCrabb, Scott McCrabb, Sarah McCrabb, Joseph McCrabb, & Rebecca McCrabb, Appellees.

No. 01–06–00701–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 17, 2007.

Rehearing Overruled July 3, 2007.

Charles B. McFarland, H. Dixon Montague, Vinson & Elkins L.L.P., Houston, TX, for Appellant.

Barbara Ellis Stanley, Helml & Greene, LLC, Houston, TX, for Appellees.

Panel consists of Justices NUCHIA, JENNINGS, and HIGLEY.

## OPINION

TERRY JENNINGS, Justice.

In this condemnation proceeding, appellant, Motiva Enterprises, LLC ("Motiva"), challenges the trial court's summary judgment granted in favor of appellees, Audeen McCrabb, Norma Ann Euton, Connie Mendez, Tom Mendez, Kirk McCrabb, Kathy McCrabb, Scott McCrabb, Sarah McCrabb, Joseph McCrabb, and Rebecca McCrabb ("the McCrabbs"), awarding the McCrabbs $304,000 for the value of 7,677 square feet of land actually condemned. In its sole issue, Motiva contends that the trial court erred in determining that Moti-

va did not have the right to recover for its "lost leasehold" interest in the property.

We affirm.

### Factual and Procedural Background

In 1971, Motiva, through Shell Oil Company, entered into a long-term ground lease with the McCrabbs for the purpose of operating a gas station and convenience store. Article 14 of the lease, in relevant part, provides,

> If all of the Demised Premises shall be condemned or taken by lawful authority or if such portion of the premises be so condemned or taken making it unreasonable or imprudent to use the remaining portion for its intended use, *this lease shall terminate* as of the date when possession is required to be given in such condemnation. The rent shall be adjusted to such date and all further rights and liabilities of the parties under this lease shall terminate, except that Tenant shall be entitled to receive out of the proceeds of such condemnation the amount attributed to any of the following: buildings or other improvements installed on the Demised Premises by Tenant; any damages to Tenant's personal property resulting from said condemnation; removal or relocation costs of Tenant's anticipated business proceeds lost to Tenant; *or any special damages of Tenant.*

(emphasis added).

On behalf of the Texas Transportation Commission, the State filed a petition to condemn and acquire 7,677 square feet of the 27,086 square foot tract of land, owned by the McCrabbs and leased to Motiva, for the expansion of the Katy Freeway. The special commissioners appointed by the trial court in the condemnation proceeding found the value of the condemned property to be $1,705,000, and the State deposited that amount into the registry of the court on November 7, 2005, thus establishing the date of the taking in this case. Motiva determined that the remaining portion of the property was not suitable for continued use as a gas station and chose to terminate the lease.

Motiva and the McCrabbs both filed objections to the award of the special commissioners, thus converting the case into a judicial proceeding. *See* TEX. PROP.CODE ANN. § 21.018 (Vernon 2004). The McCrabbs filed a cross-claim for declaratory judgment, seeking a determination from the trial court that the lease between the parties terminated by its own terms on November 7, 2005 and that Motiva was not entitled to any additional compensation for its "leasehold advantage."[1] Motiva filed a general denial and cross-claim against the McCrabbs, seeking a declaration of its entitlement to compensation for its leasehold interest in the property under article 14 of the lease.

The parties then filed cross-motions for summary judgment. The trial court denied Motiva's motion for summary judgment and rendered a final judgment in favor of the McCrabbs. It concluded that Motiva owned the improvements to the land and was entitled to recover the $1,401,000 of the compensation allocated for those improvements, the McCrabbs were entitled to recover the remaining $304,000 allocated for the land, and Motiva was not entitled to any compensation for its "leasehold advantage" under the terms of the lease.

### Standard of Review

To prevail on a summary judgment motion, a movant has the burden of proving

---

1. Motiva refers to the difference between the contract rent that it was required to pay under the ground lease and the market value of the lease as its "leasehold advantage."

that it is entitled to judgment as a matter of law and that there is no genuine issue of material fact. TEX.R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). We may affirm a summary judgment only when the record shows that a movant has disproved at least one element of each of the plaintiff's claims or has established all of the elements of an affirmative defense as to each claim. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). We must accept as true evidence in favor of the nonmovant and indulge every reasonable inference and resolve all doubts in favor of the nonmovant. *Cathey*, 900 S.W.2d at 341. A summary judgment must stand or fall on the grounds expressly presented in the motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented and render the judgment that the trial court should have rendered. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex.2004).

### "Special Damages"

In its sole issue, Motiva argues that, based on its reservation of the right to recover its "special damages," it is entitled to "recover its damages for its lost leasehold," i.e., the market value of its leasehold interest in the property under the ground lease. The McCrabbs argue that because Motiva's leasehold rights terminated on November 7, 2005, Motiva is not entitled to compensation for future benefits under the lease. They also assert that the general reference in the lease to "special damages" in regard to Motiva's reserved rights upon the termination of the lease does not overcome Motiva's specific, contractual relinquishment of its leasehold rights that occurred upon condemnation.

Under Texas law, parties have a right to contract for termination of a lease in the event of condemnation. *J.R. Skillern, Inc. v. leVison*, 591 S.W.2d 598, 599 (Tex.Civ.App.-Eastland 1979, writ ref'd n.r.e.). A lessee is entitled, as a matter of law, to share in a condemnation award when part of its leasehold interest is lost by condemnation. *Texaco Ref. & Mktg., Inc. v. Crown Plaza Group*, 845 S.W.2d 340, 342 (Tex.App.-Houston [1st Dist.] 1992, no writ). Unless a lease provides that it terminates upon condemnation, the tenant will recover compensation for the unexpired term. *Id.* But, if a lease provides that it terminates upon condemnation, the lessee has no interest in the condemnation award. *Id.; see also Fort Worth Concrete Co. v. State*, 416 S.W.2d 518, 521 (Tex.Civ.App.-Fort Worth 1967, writ ref'd n.r.e.) ("A tenant whose lease provides for its termination upon the taking of the leased premises for a public use, is entitled to no compensation when it is condemned."). Thus, Motiva had a right to part of the condemnation award unless it waived that right in the lease or elsewhere. *See Texaco Ref. & Mktg., Inc.*, 845 S.W.2d at 342.

In *Texaco Refining & Marketing*, Crown had leased to Texaco 22,500 feet of land at $975 per month for fifteen years, with options to renew for two additional five-year terms. *Id.* at 341. The lease provided that it was solely Texaco's option to terminate the lease in the event of condemnation. *Id.* at 342. After the condemnation award was filed in the county court, Texaco exercised its option to extend the lease for five years and reserved the right to exercise any future options. *Id.* at 341. Thereafter, Texaco tendered monthly rent to Crown, but Crown refused

it, contending that the lease had terminated when Harris County became entitled to possession of the land. *Id.* Crown's contention was based on the stipulated fact that the remaining property was too small for a gas station. *Id.* Texaco asserted that the property's suitability for a gas station did not affect either Texaco's right to exercise its option to extend or its right to recover for loss of its lease. *Id.* This Court held that because the lease did not automatically terminate upon condemnation and Texaco chose to renew the lease, Texaco had the right to share in the condemnation award with Crown as a matter of law and did not waive that right. *See id.* at 342.

In *Evans Prescription Pharmacy, Inc. v. County of Ector,* the owners of a commercial building in Odessa, Texas, had entered into a ten-year lease agreement with a pharmacy. 535 S.W.2d 704, 704 (Tex. Civ.App.-El Paso 1976, writ ref'd). The lease provided that "[s]hould the leased property be taken by right of eminent domain, the lease shall be terminated." *Id.* During the term of the lease, Ector County condemned the tract of land subject to the lease for the purpose of expanding a hospital. *Id.* The court held that because the parties had contracted for the termination of the leasehold interest upon the exercise of the right of eminent domain, the pharmacy did not have a compensable interest in the condemnation proceeding. *See id.* at 706.

*Texaco Refining & Marketing* and *Evans Prescription Pharmacy* are illustrative of two well-settled principles when dealing with a leasehold interest that has been subjected to condemnation: (1) when a lease does not terminate upon condemnation, unless a lessee has waived the right, a lessee has the right to share in the condemnation award with the lessor; and (2) when a lease does automatically terminate upon condemnation, a lessee has no compensable interest. *See, e.g., Texaco Ref. & Mktg., Inc.,* 845 S.W.2d at 342; *Evans Prescription Pharmacy, Inc.,* 535 S.W.2d at 706.

Here, the lease does not define the term "special damages." In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex.2005); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Valence Operating Co.,* 164 S.W.3d at 662. Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Id.* No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Coker,* 650 S.W.2d at 393.

Motiva argues that "[b]ecause damages to a leasehold are 'special damages' in a condemnation case as a matter of law, Motiva was entitled to recover its damages for the reasonable value of its leasehold interest in the land." In other words, "all of the damages to be paid by the State, including the proceeds attributable to the land taken, are 'special damages' and would be subject to Motiva's reservation in the ground lease." However, "special damages" is actually a term of art used in condemnation proceedings.

The Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate com-

pensation being made." Tex. Const. art. I, § 17. However, not all condemnation damages are compensable. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 218 (Tex.2001). Under the Texas Property Code, in estimating injury or benefit to a property owner when a portion of a tract or parcel of real property is condemned, "the special commissioners shall consider an injury or benefit that is peculiar to the property owner and that relates to the property owner's ownership, use, or enjoyment of the particular parcel of real property, but they may not consider an injury or benefit that the property owner experiences in common with the general community." Tex. Prop.Code Ann. § 21.042(d) (Vernon Supp.2006). This section prohibits a court from considering community benefit or community injury when assessing damages. *Interstate Northborough P'ship*, 66 S.W.3d at 219; *State v. Schmidt*, 867 S.W.2d 769, 780 (Tex.1993). In determining whether damages are "community" or "special," it is the nature of the injury and whether it affects the remainder in some special, unique way. *Interstate Northborough P'ship*, 66 S.W.3d at 222.

 In contrast, under the common law, actual damages can either be "direct damages," also known as "general damages," which compensate for the loss, damage, or injury conclusively presumed to have been foreseen or contemplated by a party as a consequence of a breach of contract or wrongful act, or "consequential damages," also known as "special damages," which result naturally, but not necessarily, from the acts complained of. *See Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 163 (Tex.1992) (Phillips, C.J., concurring).

Motiva argues that damages to its leasehold, or "leasehold advantage," are "special damages as that term is understood under the common law" because "damages to a leasehold ... are distinct from these 'general damages' that typically result from a condemnation," such as the damages to a fee owner for the taking of his property. However, Motiva does not cite any authority suggesting that the inclusion in a lease agreement of the phrase "special damages" in regard to reserved rights upon termination of a lease entitles a lessee to recover from a lessor its lost future "leasehold advantage" after the lease is terminated.

Here, the lease agreement specifically provided that the lease itself would "terminate as of the date when possession is required to be given" in condemnation. Because the lease automatically terminated upon condemnation, Motiva had no compensable interest in regard to the termination of the lease. *See Texaco Ref. & Mktg., Inc.*, 845 S.W.2d at 342; *Evans Prescription Pharmacy, Inc.*, 535 S.W.2d at 706. Motiva's construction of the term "special damages" in reference to its reserved rights upon termination of the lease conflicts with the specific language in the lease providing that it actually terminated upon condemnation. Because the lease itself actually terminated upon condemnation, Motiva, as a matter of law, was not entitled to recover any damages for its "lost leasehold." Accordingly, we hold that the trial court did not err in rendering judgment that Motiva was not entitled to any compensation for its "leasehold advantage" under the terms of the lease.

We overrule Motiva's sole issue.

## Conclusion

We affirm the judgment of the trial court.